IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JAAFAR TSOULI-MOUFID,**<br>*Plaintiff* | **CIVIL ACTION** |
| v. | |
| **CREDIT CONTROL, LLC,**<br>*Defendant* | **No. 19-5400** |

## MEMORANDUM

PRATTER, J.                                                                                                       OCTOBER 26, 2020

Disruptive dinnertime calls. A rush to answer a ringing phone, but no one is on the other end. Distressed, the debtor hires a lawyer to put a stop to the calls. On behalf of the debtor, the lawyer later sues the debt collector believed to be responsible under the Fair Debt Collection Practices Act (FDCPA), a federal law designed to deter exactly this sort of behavior. *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1720 (2017).

In FDCPA cases, a debtor often sues on imperfect information. For instance, several hang-up calls from unlisted or unknown numbers might not come from the same debt collector. The debtor thus often alleges facts on an information-and-belief basis that, after getting discovery, do not always end up being accurate. That does not mean, however, that the lawsuit was brought in bad faith or with the intent to harass the collector. And when the debtor's counsel moves to voluntarily dismiss soon after receiving that discovery, the FDCPA does not entitle the debt collector to its attorneys' fees or costs.

That is the case here. The debtor sued on an information-and-belief basis, but, after learning that those allegations probably were not true, promptly dismissed his suit. So, the suit was brought in good faith and was not maintained in bad faith. The Court thus dismisses the debtor's case with prejudice but denies the debt collector's motion for attorneys' fees and costs.

1

## BACKGROUND AND PROCEDURAL HISTORY

Mr. Tsouli-Moufid sued Credit Control, a debt collector, alleging that its collection practices violated several provisions the FDCPA, 15 U.S.C. §§ 1692-1692p, and the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law, 73 Pa. Stat. §§ 201-1, *et seq*. Mr. Tsouli-Moufid alleged that Credit Control, among other things, repeatedly called him at irregular times and places seeking to collect a debt from him, misrepresented the amount that was owed, and sought to collect an amount that included improper fees and interest. Credit Control removed the case to federal court. Not long after, the case was designated for arbitration with a hearing scheduled in April 2020.

Mr. Tsouli-Moufid served his initial discovery requests last December. The next day, Credit Control sought to depose Mr. Tsouli-Moufid and, over the next few weeks, served its discovery responses. Those responses effectively rebutted many of Mr. Tsouli-Moufid's allegations. So, the day before Mr. Tsouli-Moufid's scheduled deposition, his lawyer explained that Plaintiff would not appear; rather, he was prepared to enter a stipulation of voluntary dismissal. Doc. No. 7 at 5-6; Doc. No. 11 at 6-7. Credit Control rejected the proposed stipulation and rested its decision on the assertion that each party must bear its own fees and costs.

Pending are two motions. Mr. Tsouli-Moufid moves to dismiss his case with prejudice under Federal Rule of Civil Procedure 41(a)(2). Doc. No. 7. As a result, the scheduled arbitration was cancelled. Doc. No. 9. Credit Control does not oppose the motion to dismiss. Doc. No. 8. Instead, it moves for an award of attorneys' fees and costs, which Mr. Tsouli-Moufid opposes. Doc. Nos. 11, 13, 14.

## Legal Standards

### I.   Voluntary Dismissal

A plaintiff may move for voluntary dismissal under Federal Rule of Civil Procedure 41(a)(2) after the filing of an answer or a motion for summary judgment. This rule provides, in pertinent part, that "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." Fed. R. Civ. P. 41(a)(2). Although the default rule is that a plaintiff's first dismissal is *without* prejudice, this presumption is overcome when the plaintiff's notice of dismissal or the court's order entering the dismissal "states otherwise." *Papera v. Pa. Quarried Bluestone Co.*, 948 F.3d 607, 610 (3d Cir. 2020) (discussing Rule 41(a)).

Whether to grant a motion for voluntary dismissal is within the sound discretion of the court. The court may grant a dismissal with prejudice "where it would be inequitable or prejudicial to defendant to allow plaintiff to refile the action." *Chodorow v. Roswick*, 160 F.R.D. 522, 523 (E.D. Pa. 1995). "The prejudice to defendant must be something other than the mere prospect of a second lawsuit." *Id.* (citing *Miller v. Trans World Airlines, Inc.*, 103 F.R.D. 20, 21 (E.D. Pa. 1984)). Courts within this circuit have held that a court lacks discretion to deny a motion under Rule 41(a)(2) when the plaintiff moves to dismiss with prejudice. *Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, No. CIV. 01-3061, 2006 WL 208562, at *3 (D.N.J. Jan. 26, 2006) (collecting cases).

### II.   Award of Fees and Costs

In general, the "American Rule" provides that each party in a litigation bears its own attorneys' fees and costs, unless a statute or contract provides otherwise. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252 (2010). A court has discretion to award fees and costs

3

as a term of dismissal under Rule 41(a)(2)—although such an award is warranted only in "extraordinary circumstances." *Carroll v. E One Inc.*, 893 F.3d 139, 146 (3d Cir. 2018). A sanction in the form of a fee award must be compensatory rather than punitive. *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017).

Courts sometimes depart from the American Rule and award attorneys' fees and costs in three situations. First, upon a finding that an FDCPA action was brought in "bad faith" *and* for purposes of "harassment," the court may award fees and costs to the defendant. 15 U.S.C. § 1692k(a)(3). Second, a court may order costs, expenses, and fees from an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927. The principal purpose of imposing attorney sanctions under § 1927 is "the deterrence of intentional and unnecessary delay in the proceedings." *Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll. of Pa.*, 103 F.3d 294, 297 (3d Cir. 1996). Finally, the court may exercise its inherent power to "assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (internal quotation omitted).

## DISCUSSION

### I. Unopposed Motion to Dismiss

The Court can easily resolve this motion. Rule 41(a)(2) provides for dismissal at the plaintiff's request after the filing of an answer. Fed. R. Civ. P. 41(a)(2). Dismissal with prejudice operates as an adjudication on the merits and would thus preclude Mr. Tsouli-Moufid from re-asserting these claims. *Papera v. Pa. Quarried Bluestone Co.*, 948 F.3d 607, 610-11 (3d Cir. 2020). Credit Control does not oppose Mr. Tsouli-Moufid's motion to dismiss and agrees that dismissal is warranted, provided the Court retain jurisdiction to rule on its pending motion for fees and costs. The Third Circuit Court of Appeals has held that a district court may award attorneys'

fees and costs as a term of dismissal under Rule 41(a)(2). *Carroll v. E One Inc.*, 893 F.3d 139, 146 (3d Cir. 2018).

The Court thus grants the unopposed motion to dismiss with prejudice but retains jurisdiction to consider Credit Control's motion for attorneys' fees and costs. [1]

## II.  Credit Control's Motion for Attorneys' Fees and Costs

Credit Control does not oppose dismissal, provided that the Court retain jurisdiction long enough to resolve its outstanding claim for attorneys' fees and costs. As an initial matter, when a plaintiff dismisses an action with prejudice, a defendant is generally not permitted to recover fees "absent exceptional circumstances." *Carroll*, 893 F.3d at 146. In *Carroll*, the Third Circuit Court of Appeals considered a "litigant's failure to perform a meaningful pre-suit investigation, coupled with a litigant's repeated practice of bringing claims and dismissing them with prejudice after inflicting substantial costs on the opposing party and the judicial system" constituted such an "exceptional circumstance." *Id.* at 149. To no one's surprise, the parties dispute whether exceptional circumstances exist here.

Credit Control also asserts three other bases for its motion: an award under the FDCPA's cost-shifting provision, sanctions under 28 U.S.C. § 1927, and the Court's inherent powers. Each of these grounds is considered in turn.

### A. "Exceptional circumstances"

#### i.  *Pre-suit Investigation*

The Third Circuit cautioned that finding that a litigant has failed to perform a meaningful pre-suit investigation is a "high bar" to meet. *Carroll*, 893 F.3d at 149. "The run-of-the-mill case

---

[1] For this reason, Plaintiff's various arguments that sanctions are not warranted because retrospective jurisdiction is disfavored incorrectly assumes the Court lacks jurisdiction. The Court has not yet dismissed the case, nor otherwise disposed of the action. Thus, the Court continues to have jurisdiction over this matter.

will not meet such a bar," even when the moving party thinks that a more thorough investigation was warranted. *Id.* Counsel for the class of plaintiffs in *Carroll* did not communicate with their clients until the depositions; had counsel performed even the most cursory investigation, the deficiency of the claims would have been plain. *Id.* at 142. In upholding attorneys' fees and costs, the appellate court admonished counsel for their "uniformed rush to the courthouse [which] skirts the norms of proper legal practice." *Id.* at 150 (counsel filed 1,300 actions in 23 separate jurisdictions).

Credit Control claims Plaintiff and his counsel knew or should have known each of the factual contentions asserted lacked evidentiary support. The Court is not persuaded that this case is at all analogous to *Carroll* and addresses two of Credit Control's examples here:

*First*, Credit Control contests the allegation that it contacted Mr. Tsouli-Moufid at irregular times and places and hung up before identifying itself. Doc. No. 1 ¶¶ 14, 18. According to Credit Control's supporting declaration, Credit Control placed a total of four calls to Mr. Tsouli-Moufid within the FDCPA's applicable one-year statute of limitations. 15 U.S.C. § 1692k(d). Allegedly, these calls were all made between the hours of 11 a.m. and 4 p.m., which fall within the Act's statutorily prescribed times. 15 U.S.C. § 1692c(a)(1). Mr. Tsouli-Moufid disputes Credit Control's recollection of the calls and attaches a call log showing multiple hang up calls and calls after hours. Doc. No. 13-2 at 13. It is not immediately apparent how to read the call log because the callers are not identified by full names. But Mr. Tsouli-Moufid attaches the call log as probative of a FDCPA violation.

Assuming that Credit Control is correct that it only placed four calls to Mr. Tsouli-Moufid, there may well have been other debt collectors who also called him during the applicable period but Mr. Tsouli-Moufid had no way—absent discovery—to determine which company was calling

(if they routinely hung up). Such conduct could constitute a legitimate grievance *at the time of filing*, even if discovery later showed otherwise. That is why "[t]he FDCPA is not designed to penalize such litigants, who litigate honest grievances but utterly fail to prove them." *Hamburger v. Northland Grp., Inc.*, No. 3:13-CV-01155, 2016 WL 554833, at *5 (M.D. Pa. Feb. 10, 2016).

*Second*, Credit Control disputes that it sought to collect amounts "comprised largely of improper fees and/or interest." Doc. No. 1 ¶ 15. Credit Control produced to Mr. Tsouli-Moufid a letter from Honda, to whom Mr. Tsouli-Moufid owed the debt, which reflected the amount due and his payment history. The letter reflects the balance that Credit Control sought to collect. Credit Control notes that Mr. Tsouli-Moufid could have requested this payment history from Honda or Credit Control before filing his complaint. Because Mr. Tsouli-Moufid refused to sit for his deposition, Credit Control does not know whether he had this letter prior to filing his complaint and/or proceeded with this claim regardless. Mr. Tsouli-Moufid responds by producing an account summary with varying "maintenance fee" charges.

Mr. Tsouli-Moufid alleges that his intent at the time of filing the complaint was to seek relief from a company that he believed was badgering him and so he did not file in bad faith. And he contends that disputed issues of material fact still exist, including the call logs. The pending motion is not one for summary judgment, so the Court is not required to resolve these disputed facts. The Court, however, takes notice of the dispute as consideration of the question of whether Mr. Tsouli-Moufid filed in bad faith.[2]

---

[2] Credit Control counters in its reply that Mr. Tsouli-Moufid's self-serving affidavit and supporting documents should not be considered as evidence of good faith because Plaintiff did not sit for a deposition. Doc. No. 14 at 2. But Mr. Tsouli-Moufid decided not to appear for a deposition *after* receiving discovery which rebutted certain of his allegations. The Court rejects Credit Control's argument that such a decision is evidence of bad faith. Nor does the decision foreclose the possibility that Mr. Tsouli-Moufid alleged facts upon information-and-belief about Credit Control's conduct *before* receiving that discovery. Moreover, the Court notes the attack by Credit Control on the efficacy of Mr. Tsouli-Moufid's affidavit while presumably urging the Court to rely on Credit Control's declaration.

Given the mismatch between the allegations in the complaint and the operative facts, Plaintiff's counsel may have filed a form document, or, at least, likely could have done more to investigate the particular claims. However, such an assumption about counsel's dilatoriness does not meet the "high bar" the Third Circuit set out. *Carroll* was an "example of some of the excesses of modern mass tort litigation." *Carroll*, 893 F.3d at 152. Counsel in *Carroll* plowed ahead with discovery even when deposition testimony revealed meritless and time barred claims. *Id.* at 149-50. By contrast, although Plaintiff's counsel here filed the complaint with a settlement demand and arguably deficient allegations, he requested a dismissal upon receipt of Credit Control's responses a month after serving the requested discovery.

### ii. *Repeated Practice of Bringing Claims and Dismissing Them with Prejudice*

Credit Control details a series of "nuisance" settlements Plaintiff's counsel has sought to extract from it. This is the fourth case in the past two years Plaintiff's counsel has filed suit against Credit Control, asserted similar allegations, then sought to dismiss after Credit Control noticed a deposition of plaintiff and served its discovery responses. Doc. No. 8 at 4; Doc. No. 11 at 21-22. Credit Control notes that the plaintiff in each of these cases offered to dismiss the case on the eve of his deposition. Doc. No. 11 at 21-22. Each of these three prior cases were dismissed with prejudice via a stipulation. *See Cherice Campbell v. Credit Control, LLC*, No. 18-cv-03091; *Yvonne Williams v. Credit Control, LLC*, No. 18-cv-04212; *Bosedo Ogunleye v. Credit Control, LLC*, No. 18-cv-05168.

Plaintiff's counsel's practice of filing FDCPA suits is not wholly surprising given that the FDCPA permits attorneys' fees for even a "technical" breach of the Act. Congress has provided that any debt collector who fails to comply with any provision of the Act is liable "for the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C.

§ 1692k(a)(3). Although the FDCPA is designed to protect debtors, the Act's strict-liability and fee-shifting provisions can naturally incentivize litigation. Indeed, various courts have remarked that the FDCPA's private-enforcement provision has sprouted a cottage industry of law firms who frequently litigate claims under consumer-protection statutes like the FDCPA. *See, e.g., Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 514 (6th Cir. 2007). In any event, debt collectors like Credit Control and their counsel (who advertise their experience defending FDCPA claims) are *also* frequent fliers and motion filers in these cases. The Court finds it unremarkable that Plaintiff's counsel has before encountered Credit Control. And to the extent the FDCPA is responsible for a "proliferation of litigation", *id.*, Credit Control garners few points by filing this motion.[3]

### iii.  *Substantial Costs on Opposing Party and Judicial System*

The Court rejects Credit Control's claim that this litigation has imposed substantial costs on either it or the Court. Although the Third Circuit in *Carroll* did not define "substantial litigation costs," the costs there were orders of magnitude far greater from those requested here. *Carroll v. E-One, Inc.*, No. 15-CV-0562, 2017 WL 1508987, at *5 (E.D. Pa. Apr. 26, 2017), *aff'd sub nom. Carroll v. E One Inc*, 893 F.3d 139 (3d Cir. 2018) (awarding $127,823.47 to defendants).

---

[3] The Court further notes the differences in economics of legal representation on either side of the "v." in FDCPA litigations. The statutory cap on individual damages means that the plaintiffs' bar, which is tasked with enforcing the FDCPA as "private attorneys general," *Jensen v. Pressler & Pressler*, 791 F.3d 413, 419 (3d Cir. 2015) (internal citation omitted), often relies on the availability of fee shifting in successful cases to keep their consumer-protection practices viable. *See* 15 U.S.C. § 1692k(a). By contrast, the defense bar in these cases (including here) are usually paid on an hourly basis. Doc. No. 11-5. Plus, separate from the law-firm economics, the financial disparity between an individual debtor plaintiff and a corporate debt collector, like Credit Control, speaks for itself.

9

Credit Control currently requests $1,675.00 in attorneys' fees and $400.00 in costs for defending this action. Doc. No. 11-1.[4] Supposedly this sum represents the costs and fees from removing the complaint, and preparing and responding to written discovery (including Credit Control's own requests for discovery extensions). No depositions have taken place. *Lasry v. JP Morgan Chase & Co.*, 2020 WL 1666157, at *2 (D.N.J. Apr. 3, 2020) (denying motion for sanctions in a Telephone Consumer Protection Act dispute after most of the discovery was complete).

The fees and costs from motion practice are either de minimis or the result of Credit Control's own actions. Credit Control opted to file the pending motion for fees and costs rather than execute a stipulation of dismissal. *Paluch v. Wakefern Food Corp.*, No. CV 18-4765, 2019 WL 955285, at *4 (E.D. Pa. Feb. 27, 2019) ("Court costs, such as the filing fee, are modest and are a byproduct of the removal, an elective procedure for Defendants."). The Court does not find the roughly $2,000 Credit Control seeks to be "substantial," particularly when it is orders of magnitude smaller than cases in which courts have granted such relief. The Court does applaud Credit Control's prompt production of material in response to discovery requests because non-dilatory responses both reduce Credit Control's own costs and, in this case at least, led to a more expeditious resolution as well.

The Court has not incurred costs that would warrant the relief requested. Except for these pending motions, the parties have not filed any dispositive motions that the Court has needed to resolve, nor has this litigation upended the Court's docket, particularly since the arbitration hearing was cancelled. Ironically, the most time that has been spent on this case to date is in resolving

---

[4] It also notes it incurred a total of $6,602.50 in fees and costs defending the three prior cases brought by Plaintiff's counsel. Doc. No. 11 at 21-22.

10

whether the Court has been sufficiently inundated with work to warrant granting Credit Control its fees and costs.

For the foregoing reasons, the Court does not find this case is an "extraordinary circumstance" warranting relief in conjunction with Rule 41(a)(2) dismissal. The financial incentives of the Act encourage plaintiffs' counsel to file FDCPA complaints based on arguably incomplete information, which needs to be supplemented or corrected by discovery. Although Mr. Tsouli-Moufid might ultimately be incorrect that the hang up calls were from Credit Control, he only learned this through discovery. The Court has not been burdened by this case (setting aside the present motion) nor has Credit Control amassed the amount or kind of expenses that has been found to warrant relief elsewhere.

Finally, fees and costs are not typically warranted when plaintiff has moved to dismiss with prejudice and is thus barred from re-litigating his claims as Mr. Tsouli-Moufid has here. *Paluch v. Wakefern Food Corp.*, No. CV 18-4765, 2019 WL 955285, at *4 (E.D. Pa. Feb. 27, 2019) ("Courts will attach costs and fees to voluntary dismissals *without prejudice* more often that *with prejudice*.").

### B. Section 1692k(a)(3)

Credit Control also argues it is entitled to fees under § 1692k(a)(3) of the FDCPA. This provision provides that "[o]n a finding by the court that an action under this section was brought in bad faith *and* for the purpose of harassment, the court may award to the defendant attorneys' fees reasonable in relation to the work expended and costs." 15 U.S.C. § 1692k(a)(3) (emphasis added).

Credit Control analogizes this case to one recently decided in the District of Connecticut, which awarded fees and costs upon a finding of bad faith. *Cobb v. Enhanced Recovery Co.*, No.

11

3:17-CV-1629, 2020 WL 1158468, at *13 (D. Conn. Mar. 10, 2020) (awarding $41,871.95 to defendant). *Cobb* is distinguishable for several reasons: *First*, the defendant in *Cobb* incurred significantly more fees in defending against the action. This is because *Cobb* proceeded through summary judgment despite plaintiff maintaining positions that discovery had shown were meritless. In contrast, Mr. Tsouli-Moufid quickly moved to dismiss his suit voluntarily after reviewing Credit Control's discovery responses. *Second*, along with the briefing for that motion, the parties in *Cobb* engaged in much more discovery than in this case and had participated in a settlement conference before a magistrate judge. *Third*, the *Cobb* district court emphasized the extortionary nature of plaintiff's counsel's settlement demands (i.e., "You are supposed to be there WITH AUTHORITY to pay the $5k[.] Let's do it now.") *Id.* at *3. *Finally*, the court recounted the multiple occasions in which plaintiff's counsel "has run afoul of courts in this district" for abusing the FDCPA's attorneys' fee provisions. *Id.* at *13.

This case is in its relative infancy—as reflected by the roughly $2,000 Credit Control seeks to recover. Regardless of the ultimate merits of Plaintiff's claim (and the Court is not tasked with resolving that here), Plaintiff sought to dismiss before any dispositive briefing, with the benefit of reviewing Credit Control's responsive discovery. So he brought his suit in good faith and did not maintain it in bad faith. More fundamentally, Credit Control does not cite a single case where a court, upon dismissal under Rule 41(a)(2), awarded fees under Section 1692k(a)(3). For these reasons, Credit Control has not shown that fee shifting is warranted here.

### C. 28 U.S.C. § 1927

Credit Control also seeks to assess costs against Plaintiff's counsel under 28 U.S.C. § 1927. An attorney whose conduct "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees

reasonably incurred because of such conduct." 28 U.S.C. § 1927. Sanctions under § 1927 are levied against the attorney, not the litigant, when the former abuses the litigation process.

"[S]anctions may not be imposed under Section 1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal." *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 142 (3d Cir. 2009) (quoting *LaSalle Nat'l Bank v. First Conn. Holding Grp., L.L.C. XXIII*, 287 F.3d 279, 289 (3d Cir. 2002)); *Hawthorne v. Municipality of Norristown*, No. CV 15-01572, 2016 WL 1720501, at *2 (E.D. Pa. Apr. 29, 2016) (finding that sanctions were warranted because counsel should have dismissed the case but instead maintained it by taking multiple depositions and proceeding to summary judgment).

Here, however, no dispositive motions were filed, no discovery motions were brought, and, because Plaintiff himself sought to dismiss the suit, the arbitration hearing was cancelled, saving everyone concerned time and trouble. Plaintiff's counsel has not "multiplied the proceedings" when the Court has not been asked to resolve any of these issues. Plaintiff's counsel offered to dismiss upon receipt of Credit Control's discovery responses, which revealed that the claims likely did not have merit. Thus, he did not maintain the litigation in bad faith. Exchanging preliminary discovery requests and settlement demands *without involving the court* does not "multiply the proceedings" to justify sanctions under 28 U.S.C. § 1927.[5]

---

[5] Recognizing that not every presiding judge may approach this question in the same vein necessarily, counsel would be well-advised to assess the judicial landscape. *See, e.g., Johnson v. SmithKline Beecham Corp.*, No. 2:11-CV-005782-PD, 2014 WL 6851277, at *14 (E.D. Pa. Dec. 4, 2014), *report and recommendation adopted*, No. CIV. 11-5782, 2015 WL 1004308 (E.D. Pa. Mar. 9, 2015) (sanctioning counsel for "plunging ahead in the face of overwhelming evidence that the claim cannot succeed").

### D. The Court's Inherent Authority

Finally, Credit Control invokes the Court's inherent authority to "discipline attorneys who appear before it." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991). For the reasons articulated above, the Court declines to exercise that power here. Put simply, litigation brought in good faith and not maintained in bad faith is not grounds for attorney sanctions, which require "egregious" conduct. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 189 (3d Cir. 2002) (quoting *Martin v. Brown*, 63 F.3d 1252, 1265 (3d Cir. 1995)).

### CONCLUSION

For the reasons set out in this memorandum, the Court grants Plaintiff's Motion to Dismiss with Prejudice and denies Defendant's Motion for Attorneys' Fees and Costs. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE